IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DR. DESMOND HODA, D.C.                                          PLAINTIFF

vs.                                          CIVIL ACTION NO. 1:08cv1313-HSO-JMR

COVENTRY HEALTHCARE, INC.                                          DEFENDANT

**OPPOSITION TO MOTION TO DISMISS CLASS CLAIMS
AND PLAINTIFF'S INDIVIDUAL CLAIM FOR INJUNCTIVE RELIEF**

MAY IT PLEASE THE COURT:

Defendant Coventry Healthcare, Inc. (Coventry) has improperly moved to dismiss class claims and plaintiff's individual claim for injunctive relief pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Coventry's motion should be denied, as the allegations of the Complaint set forth facts which support both certification of the class action and plaintiff's claim for injunctive relief.

**STATEMENT OF THE CASE**

Plaintiff Dr. Desmond Hoda, brought the instant class action on behalf of himself and other similarly situated healthcare providers for defendant Coventry's uniform, routine and systematic breach of its standard First Health network contract. Defendant Coventry operates the First Health Preferred Provider (PPO) Network. (Complaint, ¶8). The First Health PPO Network contracts with healthcare providers throughout the nation to provide medical services at a discounted rate, using a standard contract form. (See Complaint, ¶¶9, 19).

The standard First Health provider network contract provides that with respect to bills for

workers' compensation patients, the provider will receive the lesser of the billed charges or a set percentage of the state workers' compensation fee schedule. (Complaint, ¶9).  The standard contract does not provide for a percentage reduction of the billed charge.  Nevertheless, in breach of the plain language of its standard contract, when a provider has submitted a bill less than the applicable fee schedule, First Health has applied the percentage discount applicable to the fee schedule amount to the billed charge, rather than to the fee schedule amount, resulting in an underpayment to the doctor. (Complaint, ¶¶ 10, 11, 12).

Coventry takes this improper discount through the use of automated proprietary software applications and systems. (Complaint, ¶¶ 13, 19, and 22).  That is to say, the First Health computerized bill payment system is programmed to apply the improper discount every time a bill is submitted in which the billed amount is less than the fee schedule amount. (Complaint, ¶22). Hence, the breach of the standard First Health network contract giving rise to this class action is "routine and systematic." (Complaint, ¶13).  The damages arising from this breach in most cases are small, rendering individual litigation to redress the under-payments untenable. (Complaint, ¶15). The providers affected by this routine and systematic practice are believed to number in the thousands. (Complaint, ¶16).

In addition to recovery of the damages sustained for past breaches of the standard contract, plaintiff seeks injunctive relief to prevent future breaches of the contract.  Specifically plaintiff seeks declaratory relief to the effect that the practice violates the standard contract terms (Complaint, ¶21), and injunctive relief to amend the proprietary First Health software so that it is no longer programmed to take the improper discount (Complaint, ¶22).

In light of the systematic and routine nature of First Health's computer-programmed breach

of a standard form contract, the small amount of damages in each individual instance, and the sizeable number of providers affected by the practice, plaintiff brought the instant suit as a class action. Plaintiff seeks to represent two classes. The first is an injunctive class consisting of "Healthcare providers in all states other than Louisiana who have contracted with the First Health Network." This class seeks to capture all providers as to whom First Health could improperly take a discount in the future, and who as such would benefit from the injunctive relief sought. The second class is a damages class, brought on behalf of all persons who would have been affected by First Health's taking the improper discount, namely:

> Healthcare providers in all states other than Louisiana who have had their workers' compensation bills discounted pursuant to PPO agreements with Coventry's First Health PPO Network where the provider has charged less than the applicable state workers' compensation fee or reimbursement schedule.

No discovery has yet been taken in this action. However, undersigned counsel have been involved in other litigation involving the First Health Network, through which undersigned counsel learned many of the facts giving rise to the allegations in the complaint.[1] Discovery taken in other litigation indicates that, as alleged in the Complaint, the First Health network contract is a standard contract, and is in fact the only form of network contract used by First Health.[2] This discovery also confirmed that all provider bills are discounted pursuant to the network contracts by proprietary First

---

[1] Plaintiffs are mindful of the rule that, in connection with a Rule 12 motion to dismiss, the Court generally should not consider evidence beyond the allegations of the Complaint. Plaintiffs have directed this Court to evidence gleaned through discovery in other actions merely to provide a sense of the sort of information likely to be gleaned through discovery directed to the class certification issue.

[2] See Deposition of First Health through its designated representative, Shelly McCarthy, at 110 attached as Ex. A.

Health automated computer software.[3]

Additionally, undersigned counsel retained Dr. Brian Heller, PhD., an expert in administration and billing practices within the healthcare industry, with specialized knowledge about the use of automated bill payment software within the PPO industry.[4]  Dr. Heller confirmed that the use of such proprietary software to perform automated discounting functions is standard within the industry.[5]  Dr. Heller further opined that, in accordance with industry practice, all the information necessary to determine whether Coventry breached the contract in the manner set forth in the Complaint, and all information pertinent to each such instance of the breach, would be contained in the First Health network computer records in a searchable format.  That is to say, the information necessary to determine the particulars of each instance of breach (*e.g.* services rendered, bill amount submitted, amount of discount taken, amount of the applicable fee schedule charge, whether the discount was taken on an amount less than the applicable fee schedule charge, identity and location of the provider, and date of service) could be obtained by querying the defendant's computer records, without input from a single class member or individualized consideration of the particulars of any individual claim.

Although no discovery has yet been taken in this matter, Coventry has moved to dismiss the class allegations based on the erroneous and unsupported assertion that "as a matter of law" no class could ever be certified in this matter.  Additionally, First Health seeks to dismiss Dr. Hoda's claims

---

[3]  *Id.*, at 97-100.

[4]  As with the deposition testimony referenced above, at this Rule 12 motion phase of the litigation, Dr. Heller's opinion testimony is offered solely for the purpose of demonstrating the sort of information that plaintiffs would expect to reveal through class certification discovery.

[5]  See Affidavit of Dr. Brian Heller, PhD attached as Ex. B.

for injunctive relief, but not his claims for damages.  Plaintiffs oppose the motion.

## ARGUMENT

Plaintiffs have alleged facts which, taken as true and in the light most favorable to plaintiffs, would allow for certification of the nationwide class Dr. Hoda seeks to represent.  Coventry wrongly asserts that "as a matter of law" this Court could never certify a class action in this matter.  On the contrary, claims for uniform breach of standard contracts are considered particularly susceptible to nationwide class treatment.  *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga.1983).  Before ruling on class certification, this Court should allow the parties to develop a record as to whether the instant action is amenable to class action treatment.  *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710 (5th Cir. 1973).  Coventry's motion to dismiss class allegations must be denied.  Additionally, the complaint alleges facts which would support the award of the injunctive relief sought, and Coventry's motion to dismiss plaintiffs' individual claims for injunctive relief should be denied as well.

**I.      The Court should not determine class certification on the basis of the pleadings alone.**

While a handful of courts have noted that, under certain narrow circumstances, a court may resolve the question of certification by reference to the pleadings alone, the overwhelming majority of circuits have held that courts should allow discovery on class certification issues prior to ruling on class certification, particularly when, as here, plaintiffs have alleged a course of common conduct. *Mills v. Foremost Insurance Co.*, 511 F.3d 1300 (11th Cir. 2008); *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710 (5th Cir. 1973); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21-22 (2d Cir.2003); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir.1978); *Yaffe v. Powers*, 454 F.2d 1362, 1366

(1st Cir.1972).

In *Huff*, the Fifth Circuit held:

> the [class certification] determination **usually** should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or **essential** as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable.

*Huff*, 485 F.2d at 713.

More recently, the Eleventh Circuit held in *Mills* that where, as here, plaintiffs and defendants had asserted starkly contrasting positions as to the degree of individual inquiry necessary to resolve class members' claims, the court should allow discovery prior to passing on matters of class certification. The *Mills* court held:

> the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified.... Several of our sister circuits have reversed denials of class certification that were made without opportunity for discovery, when the pleadings on their face did not show non-compliance with Rule 23 or when the satisfaction of the Rule 23 requirements may have depended on factual matters within the knowledge or possession of the defendant.

*Mills*, 511 F.3d at 1309 (citations omitted).

Against this overwhelming weight of authority holding that class certification should not be decided before class-related discovery has been conducted, Coventry has cited to only one case where a court denied class certification on the pleadings alone, and that case was not released for publication. *See Saunders v. BellSouth Advertising & Publishing Corp.*, 1998 U.S. Dist. Lexis

Page 6 of  25

20523 (S.D. Fla. 1998).  Assuming *arguendo* that this unreported case carries any authority, the holding was presumably overruled by the recent holding of the Eleventh Circuit in *Mills, supra*.

None of the *reported* cases cited by Coventry support consideration of class certification prior to any discovery.  With the exception of the unreported, overruled *Saunders* decision, in each of the cases cited by Coventry in which motions to strike class allegations were granted, the courts did so only after some discovery and/or consideration of a developed factual record.  For instance, in *Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459 (W.D. La. 2004), the court only granted the defendant's motion to strike class allegations after extensive discovery and a full evidentiary hearing at which testimony of several experts was offered.  *Id.* at 464.  The matter only came before the court on a motion to strike because the plaintiffs had failed to move for class certification.

Similarly, the courts in *Miller v. Motorola*, 76 F.R.D. 516 (D.C. Ill. 1977) and *Ayers v. Board of Education of Western Line Consolidated School District*, 61 F.R.D. 414 (N.D. Miss. 1973) both granted motions to strike class allegations only after consideration of undisputed evidence that there were only a handful of individuals similarly situated to the named plaintiff, and hence numerosity could not be met.

Here, unlike *Miller* and *Ayers*, Coventry has presented no evidence as to the size of the potential class.  Indeed, for purposes of its motion, Coventry appears to concede numerosity.  Rather, Coventry asks this Court to dismiss the class allegations based solely on Coventry's *ipse dixit* assertion that resolution of the class claims would involve individual inquiry into the claims of class members, an assertion that is expressly refuted by the complaint, which asserts that the claims are based upon a uniform practice of violating the terms of a standard contract.

Moreover, the *Ayers* holding cited by Coventry has been criticized for making a factual

determination as to the size of the class prior to complete class action discovery. *See Bessette v. Avco Financial Services, Inc.* 279 B.R. 442 (D.R.I.,2002). The court in *Bessette* held:

> This Court declines to follow the path taken in *Ayers v. Board of Education*, 61 F.R.D. 414 (N.D.Miss.1973). There, the Court granted a motion to strike class allegations because the Court found that there were "probably ten other black teachers" whose situations "may well be governed by a factual situation not common to that of others." *Id.* at 416. This Court will not engage in fact-finding prior to discovery. In this instance, when reviewing a motion to strike class allegations, the Court will confine its review to factual allegations contained within the complaint. At this point, there is no basis to conclude that the class consists of only a handful of possible plaintiffs whose factual scenarios could never be suitable for class action.

> *Besette*, 279 B.R. 442, 451-452 (D.R.I. 2002).

Those few courts that have considered class certification in a motion to dismiss have held the moving party to a very high burden. In *Besette, supra,* the court denied defendant's motion to strike allegations, holding that if class certification is to be considered in the Rule 12(b) phase, then the burden is on the defendant to show that there is no possibility that *any* class could *ever* be certified. *Id.* at 450. All factual allegations regarding class certification are to be taken as true, and all reasonable inferences are to be drawn in favor of the party opposing the motion to strike the class allegations. The allegations of the complaint, which this Court must accept as true, easily satisfy the requirements of Rule 23.

Plaintiffs have alleged that Coventry has uniformly and systematically breached uniform contract terms. Specifically, plaintiffs allege that Coventry engaged in a uniform discounting scheme, whereby every time a provider submitted a claim for compensation below the applicable state fee schedule, the bill was discounted in violation of Coventry's standard form contract.

Plaintiffs have alleged not only that Coventry's discounting was uniform and systematic, but also that the discounts were taken by an automated system. (See Complaint, ¶¶ 13, 14, 19). These allegations alone satisfy the requirements of commonality and typicality and superiority, particularly when taken in the light most favorable to plaintiffs, since uniformity is the hallmark of automation. At this stage of this litigation, these allegations must be taken as true, and this Court should only deny if certification if, after discovery, Coventry can produce evidence that refutes this assertion.

**II.     Certification of a 23(b)(3) class under the facts alleged would be appropriate.**

The allegations of the complaint, which at this stage must be accepted as true, establish that certification of a 23(b)(3) would be appropriate.

**A.     Class membership does not turn on a merits determination.**

Contrary to Coventry's assertion, membership in the class as defined does not hinge on a merits determination. Rather, class membership, as in every properly certified class action, hinges on a simple question of status: to wit, whether individuals have performed workers' compensation services and billed less than the fee schedule. The Court need not make any determination as to the merits, *i.e.* whether such bills were discounted in violation of the contract, to determine class membership. The class definition is analogous to classes defined as individuals who purchased a certain lot of a product, or bought a certain stock at a specific time.

Granted, class membership in those instances, as here, requires resolution of a fact issue: did the individual in fact purchase the correct lot of product, or buy the stock during the class period? However, the need to prove membership in the class is not the same as having a class definition that turns on a merits determination. In the instant case, class membership turns on a simple question

of status: did the provider bill less than the workers' compensation fee schedule for workers' compensation treatments? Whether that status gives rise to a cause of action is the pertinent merits question, and this Court need not resolve that merits question in order to determine class membership.

Additionally, determination of class membership does not entail the sort of complex inquiry Coventry would have this Court believe. It should first be noted that the type of inquiry necessary to determine class membership is a factual question not susceptible to resolution by Rule 12 motion practice. Before taking Coventry's word for it, the Court should allow discovery into the means whereby class members can be identified. Plaintiffs have alleged that the First Health network adjusts bills automatically using a computer program. It would follow then, that all the data necessary to determine the billed charges for workers' compensation services and the discounts taken off those charges, including whether the billed charges were less than the applicable workers' compensation fee schedule, would be contained in defendants' database. Before ruling on class certification, this Court must allow discovery into the question of whether the information necessary to determine class membership can be gleaned from defendant's computerized billing records.

Dr. Brian Heller, an expert in health care provider billing practices, has opined that in his experience, all the information necessary to determine whether one is a member of the class would in fact be contained in the First Health network's computerized billing records. Furthermore, Dr. Heller has opined that the necessary information could be gleaned from these records, both on an individual basis and on a class-wide basis, by querying the network billing files. Hence, assuming Coventry's computerized billing practices conform to the industry standard, this Court could identify each and every class member from Coventry's computer records literally with the push of a button.

Coventry asks this Court simply to take its word for it that identifying class members would entail a complicated individualized inquiry. Before denying class certification on such an *ipse dixit* assertion, this Court should allow discovery into the nature of the inquiry necessary to determine class membership. The fact that Coventry engages in uniform, automated, computerized provider bill discounting, as well as Dr. Heller's expert testimony as to the sort of information that can be gleaned from network computer billing records, would suggest that discovery on this issue will show that, contrary to Coventry's unsupported assertion, the inquiry necessary to determine class membership (and indeed to determine liability and damages) could easily be obtained from the defendant's computer records.

**B.    Variations in state law do not preclude certification.**

Without any analysis as to the actual conflicts in state law, if any, Coventry urges that, as a matter of law, conflicts of state law will always preclude certification of a nation-wide class. For Coventry to prevail at this Rule 12 motion phase, governing jurisprudence would have to hold that, as a matter of law, no nation-wide class could *ever* be certified under *any* circumstances. However, courts have held, "It would be wrong to conclude that breach of contract claims are never appropriate for nationwide class treatment." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671 (S.D.Fla.1997). The cases Coventry cites for the proposition that "as a matter of law" a nation-wide class cannot be certified do not reach such a conclusion. Rather, those cases have held that plaintiffs should be given the opportunity to present an analysis of the applicable laws for the court to determine whether conflicts of law would render the class unmanageable. *See Cole v. General Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007), *citing Castano v. The American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996).

While courts have noted that conflicts of state law can render certification of nation-wide classes problematic – usually in cases where individual issues of reliance, causation and varying prerequisites for fraud are at issue – no court has ever gone so far as to hold that a nation-wide class can *never* be certified, and indeed numerous courts have certified nationwide breach of contract claims. *See e.g. Berry v. Federal Kemper Life Assur. Co.,* 136 N.M. 454, 99 P.3d 1166 (Ct. App. 2004), *cert. denied*, 136 N.M. 515, 100 P.3d 672 (2004) *and cert. denied*, 125 S. Ct. 1640 (U.S. 2005) (certification of a nationwide class action for breach of contract appropriate where there was no significant difference among state law on issue of contractual interpretation); *Leszczynski, supra*; *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694 (N.D.Ga.1983) ( "The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."); *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 98 F.R.D. 254 (D.Del.1983); *Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill. App. 3d 269, 254 Ill. Dec. 194, 746 N.E.2d 1242 (5th Dist. 2001).

Even the Eleventh Circuit's holding in *Klay*, cited by Coventry, holds that any minor variations in state law do not preclude certification of a nationwide breach of contract claim such as the one asserted herein. *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004). Rejecting the argument asserted by Coventry, that variations in state contract law necessarily preclude certification, the *Klay* court held, "we accept the proposition that the applicable state laws governing contract interpretation and breach are sufficiently identical to constitute common legal issues in this case." *Id.*, 382 F.3d at 1263. While the *Klay* court ultimately denied certification of the contract claims in that case – on the grounds of individual issues not present in the instant case (see discussion, *infra*) – the *Klay* court found that variations in state contract laws were not a bar to certification of a

nationwide class.

Notably, not one of the cases denying certification of a national class on the grounds of variations of state law cited by Coventry were decided on the pleadings. Rather, the courts in each of those cases determined that certification of a nation-wide class was not certifiable under the specific facts of those cases only after development of a complete factual record. *See e.g. Marino v. Home Depot, Inc.*, 245 F.R.D. 729 (S.D. Fla. 2007) (class certification denied on plaintiffs' motion after discovery and evidentiary hearing); *Clausnitzer v. Federal Express Corp.*, 248 F.R.D. 647 (S.D. Fla. 2008) (same); *Bowers v. Jefferson Pilot Financial Ins. Co.*, 219 F.R.D. 578 (E.D.Mich. 2004) (same).

Nation-wide classes are frequently certified when it is determined that the law of a single state can be applied to all claims. *Avery, supra*. In the instant case, the contract at issue, which has been alleged to be a "standard contract", specified the application of Illinois law. If, as is alleged, the form of the contract is standard, then presumably all the contracts at issue call for the application of Illinois law. If so, then the need to consider the laws of multiple states will never arise, as this nation-wide class action will be governed by the law of a single state, Illinois. Before denying class certification, this Court must allow discovery into the question of whether Coventry's standardized First Health Network contracts contain choice of law provisions that call for the application of the law of a single state.

Before this Court rules on class certification, plaintiffs should be given the opportunity to conduct discovery into the choice of law issue, and then to present the Court with a considered analysis of the potential variations in state law, from which the Court can make an informed decision as to whether variations in state law render certification unmanageable, or whether the issues

presented in the instant case are similar to those in the myriad of nationally certified breach of contract class actions.

**C.**    **Variations in applicable statutes of limitations do not preclude class certification.**

Coventry suggests that variations in statutes of limitations under the laws of different states preclude class certification. If variations in statutes of limitations precluded certification, then none of the sundry courts that have certified nationwide breach of contract class actions could have done so. *See e.g. Berry, supra*; *Leszczynski, supra*; *Kleiner, supra*; *Coca-Cola Bottling Co., supra*; *Avery v. State Farm, supra; Klay v. Humana, supra.* Hence, it cannot be said that "as a matter of law" variations in statutes of limitations preclude certification of a nation-wide class.

In the instant case, variations among statutes of limitations would not render the class action unmanageable. The dates of service are necessarily included in the computerized billing records which this Court would access to determine which providers' bills were discounted in violation of the contract and the amounts of the improper discounts. Hence, for any improper discount for any class member in any state, the Court could readily ascertain whether the claim fell within the applicable statute of limitation of any state. Hence, the need to apply differing statutes of limitations would not render the class action unmanageable.

Coventry also incorrectly argues that variations in statutes of limitations render the class definition dependent upon the merits. The class is not defined as individuals whose claims for improper discounting have not prescribed, or individuals who have viable claims for improper discounting. If the proposed class had been so defined, then consideration of the applicable statute of limitations might have some impact on the determination of class membership. However, the

class definition is in no way dependent on any individual's success on the merits. A provider is a member of the class if that provider charged less than the fee schedule for services. The date of service, and the issue of whether the statute of limitations has run on any claim for the services, plays no part in the determination of class membership.

Additionally, this Court cannot determine whether consideration of various statutes of limitations preclude certification until discovery into the practices giving rise to the complaint has been conducted. Coventry notes that the possible applicable statutes of limitations are as short as three years and as long as ten years.[6] At this pre-discovery phase of the litigation, it is unknown how long Coventry has engaged in the improper discounting practice alleged. Depending on what discovery reveals about how long Coventry has engaged in the practice complained of, this Court may never need to conduct a conflict of law analysis as to the applicable statutes of limitations. If, for instance, Coventry started the practice less than three years prior to the filing of the Complaint, then none of the claims of any of the class members would be prescribed under any state's statute of limitations. Depending on the outcome of discovery into this key question, this Court may decided to resolve conflicts of law as to applicable statutes of limitations. However, at this pre-discovery phase of the litigation, this Court need not and should not reach any conclusion as to how to manage what are currently only theoretical conflicts as to the applicable statutes of limitations.

In support of its novel proposition that variations in statutes of limitations preclude class certification of a nationwide class as a matter of law, Coventry cites to two district courts from a different circuit. *See Clausnitzer, supra; Marino, supra.* Neither case supports Coventry's position

---

[6] It may ultimately be determined that the choice of law provision in the standard First Health network contract requires application of Illinois' statute of limitations to all class members' claims.

that class certification must be denied as a matter of law.  In both cases, class certification was denied only after discovery and consideration of a fully developed factual record.  There, faced with individual inquiries specific to the facts of those particular cases, the district courts concluded in their vast discretion, that various statutes of limitations, coupled with sundry other individualized inquiries specific to the claims asserted therein, rendered class treatment unmanageable.  After development of a factual record, this Court may ultimately reach the same conclusion; although it is much more likely that this Court will decided that this case more closely resembles the situations presented in *Berry, Leszczynski, Kleiner, Coca-Cola Bottling Co., and  Avery v. State Farm*, where courts certified nationwide breach of contract class actions.

    **D.    Under the facts alleged, it cannot be said that individual issues predominate.**

    Completely ignoring the allegations of the complaint, and before any discovery into whether the unlawful billing practice alleged in the complaint is uniform as to all class members, Coventry makes the wholly unsupported assertion that individual issues predominate over common issues in this litigation.  This unsupported assertion is belied by the specific allegations of the complaint, which at this stage of the proceedings, the Court must accept as true.

    The Complaint expressly alleges in multiple places that the underpayment scheme was "routine and systematic." (Complaint, at ¶¶10, 14).  The complaint also repeatedly alleges that the under-payments are taken through automatic computer billing software. (Complaint, at ¶¶ 13, 19).  The complaint further alleges that with respect to the workers' compensation payments at issue, the discounts are taken in violation of standard contracts. (Complaint, at ¶¶ 9, 10, 11, 12, 18, 21).  The uniform and systematic nature of the billing under-payments is set forth at paragraph 19 of the

Complaint:

> Defendant's breach of contract was routine and systematic and was accomplished through the use of Coventry's proprietary automated computer software system. As a result, Coventry's breach of contract with its First Health providers did not vary in any way from provider to provider, but instead constituted a uniform breach of its First Health Provider Agreements.

These allegations clearly establish that common issues predominate. Other than identifying the amounts to be paid to each class member, which according to the allegations of the Complaint and the expert testimony of Dr. Brian Heller, can be accomplished by querying the First Health network computer billing records, there are no individual issues.

Contrary to Coventry's assertion, the allegations in the Complaint which establish predominance of common issues are not merely conclusory. Rather, the allegations are specific, and set forth a common practice accomplished through "routine and systematic" billing practice which easily meets the *Twombly* plausibility test. It is entirely plausible, if not inescapable, that billing practices which are automated are "routine and systematic" and hence involve common questions of fact and law.

Defendant's reliance on the holding in *Klay v. Humana, Inc.* is misplaced. First, and most importantly, *Klay* was decided on a full class certification record, after discovery and an extensive class certification hearing. While under the unique facts of that case, after full evidentiary hearing, individual issues were found to predominate, *Klay* does not stand for the proposition that as a matter of law, individual issues will predominate in the instant case.

Several facts present in *Klay* distinguish that holding from the instant case. First *Klay* involved claims against multiple defendants, all of which utilized several different forms of

contracts. In the instant case, plaintiffs are asserting claims against a single defendant, for a uniform and systematic breach of a single form contract. Unlike the situation in *Klay*, the instant action based on uniform violation of a uniform contract language is uniquely suited to class treatment. "When viewed in light of Rule 23, claims arising from interpretations of a [single] form contract appear to present the classic case for treatment as a class action....". *Kleiner*, 97 F.R.D. at 692.

Second, unlike the instant case, the situation presented in *Klay* required an individualized analysis to determine whether a breach had occurred. Here, a breach occurs by the automatic application of a discount to a bill amount that per the contract should not be discounted. No individualized analysis of reasonableness of billed items or assessment of services is involved. In *Klay*, the contract terms alleged to have been breached were ones requiring that doctors be paid at a "reasonable rate" for "medically necessary" services. The *Klay* court found that in order to determine whether these terms had been breached, the court would need to consider the "insufficiency of the HMO's reasons for denying full payment," an inherently individualized inquiry. Here, under the facts alleged, there is no reason to consider First Health's reasons for denying full payment. Coventry systematically applied its discount to the wrong bill amount.

Third, and most importantly, the methods by which the defendants in *Klay* were alleged to have underpaid providers were not uniform, as is the case here. The *Klay* court rejected class treatment of the plaintiffs' claims for varying billing practices, but noted that if the billing practices had been uniform, then the claims would have been susceptible to class treatment. Most telling for certification in the instant case, the *Klay* court found that if the defendants' computerized billing systems had been set up to automatically engage in under-billing in all cases, as has been alleged here, then certification would have been proper. The *Klay* court explained:

> [A]lthough each of the defendants allegedly breached their contracts in the same general ways, they did so through a variety of specific means that are not subject to generalized proof for a large number of physicians....  For example, the plaintiffs claim that the defendants often grouped together separate procedures specified on HCFA-1500 forms submitted by doctors, frequently reimbursing them for only one of the procedures actually performed. **If the plaintiffs were able to prove that the billing programs automatically grouped together the first and second procedures specified on the HCFA-1500 form, regardless of what they were, paying doctors only for the first, then the breach of contract issue would be subject to generalized proof**. After establishing that the computer program worked in this way, the doctors would be able to simply submit their HCFA-1500 forms to the court for an easy determination of damages; no further evidence of breach would be necessary.

The instant case presents exactly the sort of situation which the *Klay* court found would be susceptible to class treatment.  Plaintiffs have alleged that with respect to all workers' compensation treatments, the First Health network's computer billing system automatically applies its deduction to the doctor's lesser billed charge rather than the fee schedule amount, in breach of the standard form First Health network provider contract.  Unlike *Klay*, which required an individualized inquiry into the reasonableness and medical necessity of each service, all the Court need determine in this case is whether First Health applied its discount to an amount that it should not have, because the bill amount was less than the fee schedule amount.  All the information necessary to make this determination is available on the E.O.B.'s (explanation of benefit forms), which according to industry practice are stored in the First Health billing records in a searchable format.[7]  Rather than conduct any individualized inquiry, the Court need only direct Coventry to submit the proper computer query, and then push "print."

The holding in *Klay* in no way supports Coventry's contention that as a matter of law, the

---

[7] See Complaint, paragraphs 13, 19 and 22.  See also affidavit of Dr. Brian Heller, PhD.

instant case could never be certified as a class action.  Indeed, it is hard to fathom why Coventry has

cited to *Klay* at all, as the reasoning in that case makes it abundantly clear that the instant case is

eminently well suited to class treatment.  While the *Klay* court found that individual questions of

whether the multiple defendants committed a breach in that case predominated over common issues,

that Court also unequivocally held that certification of a nationwide class action for "systematic and

routine" breach of a "standard contract" would be appropriate.

**III.    Plaintiffs are not attempting use Rule 23(b)(1) or 23(b)(2) certification to circumvent the requirements of Rule 23(b)(3).**

As certification is proper under Rule 23(b)(3) under the facts alleged, plaintiffs need not

address First Health's arguments regarding the use of Rule 23(b)(1) or 23(b)(2) certification to

circumvent the requirements of Rule 23(b)(3).  Plaintiffs would simply note that as the Complaint

properly seeks declaratory and injunctive relief applicable to the class (see discussion, *infra*),

certification under Rule 23(b)(1) and/or Rule 23(b)(2), as well as 23(b)(3),would be appropriate

under the facts alleged in the Complaint.

**IV.    Plaintiff has alleged a viable claim for declaratory judgment and/or injunctive relief.**

Citing Mississippi law, which as was discussed *supra*, may not be applicable to plaintiffs'

claim due to a choice-of-law provision in Coventry's standard contract calling for application of

Illinois law, Coventry urges that the named plaintiff has failed to state a cause of action for

declaratory or injunctive relief.  In support of its position, Coventry cites to the generally recognized

proposition that equitable relief is not available where there is an adequate remedy at law.  However,

Coventry ignores the fact that plaintiff has sought a declaratory judgment stating the rights of parties

under continuing contracts.  Mississippi, like every other jurisdiction in the country, recognizes that

parties to a contract may bring an action to seek declaratory judgment with respect to rights under a contract.  M.R.C.P. Rule 57.

The Mississippi Rules of Civil Procedure provide for a declaratory judgment action of the sort asserted herein:

> (a) Procedure. Courts of record within their respective jurisdictions may declare rights, status, and other legal relations **regardless of whether further relief is or could be claimed**....
> The existence of another adequate remedy does not preclude a judgment for declaratory relief in actions where it is appropriate.
>
> (b) When Available.
>
> (1) Any person interested under a deed, will, **written contract**, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, **may have determined any question of construction or validity arising under the instrument**, statute, ordinance, contract, or franchise, **and obtain a declaration of rights, status or other legal relations thereunder**.
>
> (2) A contract may be construed either before or after there has been a breach thereof....
>
> M.R.C.P. Rule 57 (emphasis added)

Like Mississippi, Illinois recognizes the right of a party to a contract to seek declaratory judgment as to the rights and obligations of parties to a contract with respect to future transactions. 735 ILCS 5/2-701. *Roland Machinery Co. v. Reed*, 339 Ill.App.3d 1093, 791 N.E.2d 716 (Ill. App. 4 Dist. 2003)  The Illinois declaratory judgment statue provides:

> The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other

written instrument, and a declaration of the rights of the parties interested.

735 ILCS 5/2-701.

"A complaint for declaratory judgment which recites in sufficient detail an actual and legal controversy between the parties and prays for a declaration of rights and, if desired, other legal relief, states facts sufficient to state a good cause of action." *Roland Machinery Co. v. Reed*, 339 Ill.App.3d at 1097, 791 N.E.2d at 719. When the potentially breaching act has not yet occurred, a declaratory judgment action is proper. *Roland, supra; Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill.App.3d 373, 806 N.E.2d 1273 (Ill.App. 2 Dist. 2004).

In addition to claims for past breaches of the contract, plaintiffs seek declaratory judgment to the effect that with respect to future transactions, the contracts at issue do not give Coventry the right to discount bills for services which are below the applicable state fee schedule. Both Mississippi law, and Illinois state law called for under the standard contracts, allow declaratory judgments of this sort. Coventry's motion to dismiss plaintiffs' claim for declaratory judgment must be denied.

Additionally, whether plaintiffs are entitled to the injunctive relief sought in the complaint is not susceptible to resolution by Rule 12 motion. Plaintiffs have requested an injunction to alter the First Health automated bill payment software to prevent the improper application of the discount in future transactions. (See Complaint, ¶ 22). First Health correctly states that injunctive relief is not available absent a showing of irreparable harm. However, whether plaintiffs will suffer irreparable harm as a result of the future automatic application of discounts in violation of the terms of the contract is an inherently fact-driven inquiry.

Without any factual support Coventry urges that the injunctive relief sought is not available, as plaintiffs have an adequate remedy at law. However, under the facts alleged, plaintiffs do not have an adequate remedy at law with respect to the future improper application of the discounts by the automated billing system. Plaintiffs have alleged that the damages resulting from these breaches are in most cases very small. (Complaint, ¶ 15). While plaintiffs may have a remedy at law – to wit a claim for compensation for the future breach when it occurs – the cost of obtaining that remedy through litigation far outweighs the damages resulting from such a breach. As a practical matter, due to the small amount of the damages, plaintiffs do not have an adequate remedy at law if Coventry continues to engage in its current automated billing practice in violation of the standard First Health network contract.

Given the high cost of litigation to recover improper discounts in the event of future breach, as compared to the negligible cost of avoiding future brief by reprogramming the First Health proprietary bill discounting software, it cannot be said that plaintiffs will not suffer irreparable harm if the Court does not issue the injunction sought. Additionally, given that future breaches can be avoided through a simple one-time alteration of the First Health bill payment software, First Health's argument that specific performance will not be ordered when continued court supervision is required is misplaced.

**<u>CONCLUSION</u>**

The Complaint alleges facts which establish that the instant action is appropriate for class treatment and that plaintiff is entitled to the declaratory and injunctive relief sought. Coventry's Motion to Dismiss Class Allegations and Plaintiffs' Individual Claim for Injunctive Relief must be denied.

Respectfully Submitted,

/s/ Korey A. Nelson
Stephen B. Murray (La. BR #9858)
Arthur M. Murray  (La.BR #27694)
Korey A. Nelson     (La. BR #30002)
**MURRAY LAW FIRM**
650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
Telephone:  504 525-8100
Facsimile:   504 584-5249

And

Dennis C. Sweet, III (Ms.BR #8104)
**SWEET AND ASSOCIATES**
158 East Pascagoula Street
Jackson, Mississippi 39201
Telephone: 601 965-8700
Facsimile: 601 965-8719

And

Daniel F. Mars (Ms.BR #1872)
**MARS, MARS, & CHALMERS**
P.O. Box 612
Philadelphia, Mississippi 39350
Telephone: 601 656-2152
Facsimile: 601 656-1186

And

Thomas A. Filo (La. BR #18210)
Richard E. Wilson (La. BR #26145)
**COX, COX, FILO, CAMEL & WILSON, L.L.C.**
723 Broad Street
Lake Charles, Louisiana 70601
Telephone: 337 436-6611
Facsimile:  337 436-9541

## CERTIFICATE OF SERVICE

I, Korey A. Nelson, do hereby certify that on December 15, 2008, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are authorized to receive electronic servicing and a copy of the foregoing has been served upon all counsel of record who are not authorized to receive electronic servicing by placing same, properly addressed and first class postage prepaid, in the United States mail.

/s/ Korey A. Nelson
Korey A. Nelson